UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:

JUAN HUMBERTO PEREZ,                    Case No. 6:05-bk-12127-ABB
                                                                         Chapter 7
    Debtor.
_____/

STEPHANIE A. PEREZ,                    Adv. Pro. No. 6:06-ap-00005-ABB

    Plaintiff,

vs.

JUAN HUMBERTO PEREZ,

    Defendant.
_____/

## MEMORANDUM OPINION

This matter came before the Court on the Complaint for Nondischargeability of Debt ("Complaint")[1] filed by Stephanie A. Perez ("Plaintiff"), against Juan Humberto Perez, the Debtor and Defendant herein ("Debtor"). The Plaintiff seeks to have certain obligations contained in the parties' divorce settlement agreement excepted from the Debtor's discharge pursuant to 11 U.S.C. § 523(a)(5), or in the alternative, § 523(a)(15). A final evidentiary hearing on the Complaint was held on December 20, 2006 at which the Debtor, the Plaintiff, and their respective counsel appeared. The Court makes the following Findings of Fact and Conclusions of Law after reviewing the pleadings and evidence, hearing live testimony and argument, and being otherwise fully advised in the premises.

---

[1] Doc. No. 1.

## **FINDINGS OF FACT**

The parties were married in 1988 and have two minor children. They were divorced on August 4, 2004 pursuant to the Final Judgment of Dissolution of Marriage ("Divorce Judgment") entered by the Circuit Court of the Ninth Judicial Circuit for Orange County, Florida.[2] The Divorce Judgment incorporates into it the Mediated Marital Separation Agreement ("Separation Agreement") executed by the parties on July 15, 2004.[3]

The parties were represented by separate counsel throughout the divorce proceedings. The Separation Agreement is the product of a mediation and resolves all obligations and responsibilities between the parties upon the dissolution of their marriage.

The Parties jointly owned their marital residence located at 495 Dunoon Street, Ocoee, Florida 34671 (the "Property").[4] The Plaintiff is the primary residential parent pursuant to the Separation Agreement and she and the children have lived together since the divorce. They continue to reside at the Property. The children are seventeen and fifteen and attend public high school full-time. The Separation Agreement provides for shared parental responsibility.

The Debtor remarried and relocated to Miami Shores, Florida in October 2004. He filed the underlying individual Chapter 7 bankruptcy case in this Court on October 4, 2005 ("Petition Date").

The Debtor voluntarily agreed to pay child support in the Separation Agreement of one thousand five hundred dollars ($1,500.00) per month "until the oldest child turns eighteen (18) years of age, dies, marries, or becomes self-supporting, whichever occurs

---

[2] Plaintiff's Ex. No. 2.
[3] Plaintiff's Ex. No. 1.
[4] Plaintiff's Ex. No. 1, p. 10 at ¶ 3.a.

first."[5] The child support will be recalculated once the Defendant's child support obligation for the eldest child terminates.[6] The Defendant's support obligation for the eldest child has not terminated.

The Debtor is obligated to pay the Plaintiff non-modifiable alimony: "a maximum alimony for a period of fifty-four months beginning on the first day of July, 2004 in the sum of Four Hundred Dollars and 00/00 ($400.00) and a like sum on the first day of the next consecutive fifty three months thereafter at which time the alimony obligation shall terminate provided it is paid in full."[7] The Debtor is obligated to maintain a one hundred thousand dollar ($100,000.00) life insurance policy for the benefit of the children and the Plaintiff as the irrevocable trustee for the children.[8] He is equally responsible with the Plaintiff for any unreimbursed health care expenses for the children and health insurance coverage for the children in the event health insurance ceases to be available to the wife.[9]

The Separation Agreement provisions are clear and unambiguous. The child support, alimony, insurance, and health expense obligations contained within Sections 6, 7, and 12 of the Separation Agreement constitute alimony to, maintenance for, and/or support of the Plaintiff and the children. These obligations are nondischargeable.

The parties agreed, at the time of their divorce, on the importance of the Plaintiff and the children remaining in the Property to allow the children to complete their education at the local schools they had been attending. The Debtor agreed to execute a Quit-Claim Deed within twenty (20) days from the Separation Agreement's execution,

---

[5] Id. at p. 16, ¶ 6.
[6] Id.
[7] Id. at p. 17, ¶ 7.
[8] Id. at p. 18, ¶ 7 (the designation of "Life Insurance" as Paragraph 7 appears to be a scrivener's error and it should be numbered as Paragraph 8. The provisions that follow would likewise have a similar scrivener's error).
[9] Id. at p. 20, ¶ 12.

3

conveying his right, title and interest in the Property to the Plaintiff.[10] The Property had an estimated value of one hundred thousand dollars ($100,000.00) at the time of the divorce. The parties obtained two mortgages, the first mortgage with Sun Trust Bank had an eighty-six thousand dollar ($86,000.00) balance and the second with Wachovia Bank had a seventy-one thousand three hundred and sixty dollar ($71,360.00) balance.[11]

The Debtor satisfied the first mortgage with Sun Trust Bank and was responsible for timely payments on the second mortgage with Wachovia Bank.[12] He agreed to pay the second mortgage within five years of the Separation Agreement's execution, paying at least fourteen thousand and four hundred dollars ($14,400.00) annually towards the principal.[13] The Debtor received full ownership of Atlas Motor Coaches, Inc. ("Atlas"), a Florida corporation the parties formerly owned jointly. The second mortgage was obtained to fund Atlas.

The Debtor ceased making payments on the second mortgage in September of 2005, and the Plaintiff began receiving foreclosure notices. The Plaintiff filed a contempt proceeding against the Debtor in the state court where the Debtor was ordered to continue making payments at a decreased amount.[14] The Plaintiff was compelled to refinance in December of 2005, obtaining two equity loans to cover incurred living and legal expenses. She has experienced substantial financial distress. She is a teacher earning thirty-six thousand dollars ($36,000.00) a year with no other source of income and is not

---

[10] Id., p. 14 at ¶ 4.a.
[11] Id. at p. 14, ¶ 4.a.
[12] Id. at ¶¶ i and ii.
[13] Id.: "The Husband shall pay each month an amount not less than one-twelfth (1/12) of the then applicable interest rate as applied to the outstanding balance on the loan. In addition, he shall also pay, by each anniversary of this Agreement, not less than %14,400.00 annually toward principal reduction."
[14] Debtor's Ex. No. 1 at ¶ 5.

employed during the summer. The Plaintiff's net monthly income is $2,130.00, with monthly expenses totaling $4,417.00.[15]

The Debtor is employed as a professional consultant for South Eastern Company earning thirty-five thousand dollars ($35,000.00) a year. He ceased Atlas operations upon his relocation to Miami Shores. The Debtor has monthly expenses totaling $6,821.86 with a net monthly income of $2,293.55.[16] The current spouse's income may be considered in relation to any reasonably necessary expenses. Her equal contribution to their shared expenses must be determined. His current wife is employed by Microsoft as a communications manager earning over one hundred thousand dollars ($100,000.00) per year. They purchased a home with a mortgage of four thousand, four hundred and ten dollars ($4,410.00) per month, and they have car payments exceeding eight hundred dollars ($800.00) per month.[17] The Debtor's expenses continue to exceed his income after considering his spouse's equal contribution.

The mortgage obligation of the Separation Agreement constitutes a property settlement and the parties did not intend otherwise. The Debtor received full ownership of Atlas and agreed to satisfy the second mortgage which was obtained to fund Atlas operations. The Plaintiff received ownership of the Property. The exchange represents a division of property and is labeled accordingly in the Separation Agreement. His payment obligation is directly related to Atlas and is not a long-term obligation. The Plaintiff's alimony is designated specifically within the Separation Agreement.

The Debtor is not financially capable of maintaining payments on the second mortgage. His monthly expenses significantly exceed his monthly income and his

---

[15] Plaintiff's Ex. No. 8.
[16] Plaintiff's Ex. No. 13.
[17] Id.

expenses are reasonably necessary. The Debtor's current wife does have substantial income but her income cannot be determinative of the Debtor's financial position. His expenses continue to exceed his income after allocating one-half of his claimed expenses to his current wife. A discharge would benefit the Debtor in a manner that outweighs the detrimental consequences suffered by the Plaintiff. The Plaintiff does have the option of selling the Property. The discharge of the Debtor's obligation to pay the second mortgage is due to be granted.

## CONCLUSIONS OF LAW

The Plaintiff challenges the dischargeability of the debt in her Complaint pursuant to 11 U.S.C. § 523(a)(5), or in the alternative, § 523(a)(15). The Chapter 7 bankruptcy petition was filed prior to the applicability of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), thus the pre-BAPCPA Code provisions will be relevant.[18]

The party objecting to a debtor's discharge or the dischargeability of a debt carries the burden of proof and the standard of proof is preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 291, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991); Fed. R. Bankr. P. 4005 (2005). Objections to discharge are to be strictly construed against the creditor and liberally in favor of the debtor. In re Hunter, 780 F.2d 1577, 1579 (11th Cir. 1986); In re Bernard, 152 B.R. 1016, 1017 (Bankr. S.D. Fla. 1993). "Any other construction would be inconsistent with the liberal spirit that has always pervaded the entire bankruptcy system." 4 COLLIER ON BANKRUPTCY ¶523.05, at 523-24 (15th ed. Rev. 2005).

---

[18] Pub. L. No. 109-8, 119 Stat. 23 (April 20, 2005). Generally applicable October 17, 2005.

6

## § 523(a)(5)

Section 523(a)(5) of the Bankruptcy Code excepts from discharge any debt "to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree, or other order of a court of record or property settlement agreement..." 11 U.S.C. § 523(a)(5) (2005). "[A] given domestic obligation is not dischargeable if it is 'actually in the nature of' alimony, maintenance, or support." In re Harrell, 754 F.2d 902, 904 (11th Cir. 1985). Federal law will delegate whether a specified debt is in the nature of support while state law offers direction. In re Strickland, 90 F.3d 444, 446 (11th Cir. 1996). A simple investigation performed by the bankruptcy court as to the nature of the obligation will suffice in making this determination. In re Harrell, 754 at 906. A court must not rely exclusively on the label provided by the parties in their settlement agreement when considering the payment's actual nature. Campbell v. Campbell (In re Campbell), 74 B.R. 805, 709 (Bankr. M.D. Fla. 1987).

The hallmark for dischargeability pursuant to § 523(a)(5) is the parties' intent. Id.; In re Sampson, 997 F.2d 717, 723 (10th Cir. 1993). A debt is in the nature of support or alimony if the parties intended at the time of its formation the obligation to function as support or alimony. In re Gianakas, 917 F.2d 759, 762 (3d Cir. 1990). "All evidence, direct or circumstantial, which tends to illuminate the parties subjective intent is relevant." In re Brody, 3 F.3d 35, 38 (2d Cir. 1993). Extrinsic evidence is relevant in determining the intent of the parties if the written settlement agreement or final judgment is ambiguous, although they are the best indication of the parties' intent. Shaver v. Shaver, 739 F.2d 1314, 1316 (9th Cir. 1984).

Courts have developed a series of factors to consider while distinguishing alimony, maintenance, or support obligations from property settlement obligations: (1) labels in agreement or order; (2) income and needs of the parties at the time the obligation became fixed; (3) amount and outcome of property divisions; (4) whether the obligation terminates on obligee's death or remarriage or on emancipation of children; (5) number and frequency of payments; (6) waiver of alimony or support rights in agreement; (7) availability of state court proceedings to modify the obligation or enforce it through contempt remedy; and (8) tax treatment of obligation. 4 COLLIER ON BANKRUPTCY ¶523.11[6] at 523-87.

The Debtor is obligated to pay the Plaintiff non-modifiable alimony, to maintain a life insurance policy for the benefit of the children in the amount of $100,000.00 with the children named as beneficiaries and the Plaintiff as the irrevocable trustee for the children, and is equally responsible with the Plaintiff for unreimbursed health care expenses for the children and obtaining health insurance coverage for the children in the event health insurance ceases to be available to the wife. The Separation Agreement provisions are clear and unambiguous. The child support, alimony, insurance, and health expenses constitute alimony to, maintenance for, and/or support of the Plaintiff and the children. These obligations are nondischargeable.

The mortgage payments do not constitute alimony to, maintenance for, and/or support of the Plaintiff. The Debtor received full ownership of Atlas, and he agreed to satisfy the second mortgage which was obtained to fund Atlas operations. The obligation represents a division of property and is labeled accordingly in the Separation Agreement. His payment obligation is related to Atlas and is not a long-term obligation. The

Plaintiff's alimony is designated specifically within the terms of the Separation Agreement. The mortgage obligation is a property settlement and not due to be excepted to the discharge pursuant to § 523(a)(5) of the Bankruptcy Code and the application of § 523(a)(15) is necessary.

### § 523(a)(15)

Section 523(a)(15) excepts from discharge:

"any debt to a spouse, former spouse, or child of the debtor and not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record. . . *unless* (A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended . . . ; or (B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor."

11 U.S.C. § 523(a)(15) (*emphasis added*). Section 523(a)(15) generally ". . . governs the dischargeability of property settlement debts as opposed to support obligations." 4 COLLIER ON BANKRUPTCY ¶523.21 at 523-118.

The provision creates an exception to an exception to discharge. Christison v. Christison (In re Christison), 201 B.R. 298, 308 (Bankr. M.D. Fla. 1996). The creditor initially bears the burden of proving the debt should be exempted from discharge. In re Gamble, 143 F.3d 223, 226 (5th Cir. 1998). The plaintiff must demonstrate the debts are not in the nature of alimony, maintenance, or support and they were incurred by the debtor in the course of the divorce or separation. The burden then shifts to the debtor to establish the debt is dischargeable as conditions exists set forth in either subsection (A) or (B) of section 523(a)(15). Id.

## *§ 523(a)(15)(A)*

Section 523(a)(15)(A) permits dischargeability of a debt where the debtor can demonstrate he has no ability to pay the debt after taking into consideration amounts reasonably necessary for the support of the debtor and his dependants. Courts have looked to the standards employed by Section 1325(b) in evaluating the debtor's ability to pay for purposes of determining dischargeability pursuant to Section 523(a)(15)(A). Christison, 201 B.R. at 309. The "disposable income" test primarily focuses on whether the debtor's expenses are reasonably necessary. Id. Income of the debtor's current is spouse is irrelevant to the debtor's ability to pay when considering this provision. Carter v. Carter (In re Carter), 189 B.R. 521, 522 (Bankr. M.D. Fla. 1995). "The current spouse's income may be considered in relation to any reasonably necessary expenses incurred for [the] debtor's own support – particularly those incurred jointly or since the date of the marriage." Christison, 201 B.R. at 310.

The Debtor is currently earning thirty-five thousand dollars ($35,000.00) a year. He has monthly expenses totaling $6,821.86 with a net monthly income of $2,293.55.[19] His current wife is earning over one hundred thousand dollars ($100,000.00) per year. They purchased a home with a mortgage of four thousand, four hundred and ten dollars ($4,410.00) per month, and they have car payments exceeding eight hundred dollars ($800.00) per month. His wife's equal contribution to their shared expenses must be given consideration, but his expenses continue to exceed his income after calculating his wife's share. He does not have the ability to maintain payments on the second mortgage with Wachovia Bank.

---

[19] Plaintiff's Ex. No. 13.

*§ 523(a)(15)(B)*

11 U.S.C. § 523(a)(15)(B) involves the application of a balancing test. The debtor must demonstrate the benefit to the debtor of discharging the debt outweighs the detrimental consequences of discharge to the creditor spouse. Balancing these interests requires a review of the totality of circumstances in comparing the financial situation of both parties and considering any other relevant subjective factors. Gamble, 143 at 226. The appropriate date for determining the parties' relative positions pursuant to the § 523(a)(15)(B) balancing test is at or about the time of trial, not the date of the divorce decree. Id. at 308; *citing* Collins v. Hesson (In re Hesson), 190 B.R. 229, 238 (Bankr. M.D. Fla. 1995). The court may consider several factors concerning the parties and their respective spouses when assessing the relative impact of dischargeability, such as, their current income, current assets, current liabilities, and their health, job skills, training, age and education. In re Molino, 225 B.R. 904, 908 (B.A.P. 6th Cir. 1998); *citing* In re Smither, 194 B.R. 102, 111 (Bankr. W.D. Ky. 1996). "The benefits of the debtor's discharge should be sacrificed only if there would be substantial detriment to the nondebtor spouse that outweighs the debtor's need for a fresh start." 4 COLLIER ON BANKRUPTCY ¶523.21[1], at 523-120.

The Debtor has no capability of satisfying the second mortgage if the obligation is not discharged in his bankruptcy. He has a net monthly income of $2,293.55 and his monthly expenses total $6,821.86. His expenses significantly exceed his current income and his expenses are reasonably necessary. The Plaintiff may have an alternate remedy of selling the Property and seeking a residence consistent with her financial position. A discharge would benefit the Debtor in a manner that outweighs the detrimental

consequences suffered by the Plaintiff. The discharge of the Debtor's obligation to pay the second mortgage is due to be granted.

A separate judgment consistent with these Findings of Fact and Conclusions of Law shall be entered contemporaneously.

Dated this 8th day of February, 2007.

_____
ARTHUR B. BRISKMAN
United States Bankruptcy Judge